IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MOLBERT JACOBS,                    )
                                   )
                Plaintiff,         )
                                   )
        v.                         )           1:10CV814
                                   )
SCOTLAND MANUFACTURING, INC.,      )
                                   )
                Defendant.         )

<u>MEMORANDUM OPINION AND ORDER</u>

Beaty, Chief Judge.

        This matter is currently before the Court on Defendant Scotland Manufacturing, Inc.'s

("Defendant" or "Scotland") Motion for Summary Judgment [Doc. #23] as to Plaintiff Molbert

Jacobs' ("Plaintiff" or "Mr. Jacobs") claim of religious discrimination in violation of Title VII

of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII"). For the reasons set forth

below, Defendant's Motion for Summary Judgment will be DENIED.

I.      FACTUAL BACKGROUND

        Mr. Jacobs is a resident of Maxton, North Carolina. (Pl.'s Mem. in Opp'n to Def.'s Mot.

for Summ. J. [Doc. #26], Ex. A, Dep. of Molbert Jacobs, at 8). Scotland is "a company that,

among other things, creates and produces stamped steel products in a 50,000 square-foot factory

in Laurinburg, N.C., for original equipment and component manufacturers." (Def.'s Mot. for

Summ. J. [Doc. #23], Ex. B, Aff. of Dafnie J. Driscoll, at 1). Plaintiff was employed as a press

operator by Scotland from 1979 to approximately 1995. (Def.'s Mot. for Summ. J. [Doc. #23],

Ex. A, Dep. of Molbert Jacobs, at 21-22). In 1995, Plaintiff voluntarily resigned his job at

Scotland and went to work for another company where he received better pay. (<u>Id.</u> at 22). In

2000, Plaintiff rejoined Scotland as a Lead Hand. (Id. at 37-38). In his capacity as a Lead Hand, Plaintiff's responsibilities included making sure that Press 11 was functioning correctly at all times while he was on duty. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. #26], Ex. A, Dep. of Molbert Jacobs, at 46).

It is against Plaintiff's religion to work on Sundays. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. #26], Ex. A, Dep. of Molbert Jacobs, at 101). In hiring Plaintiff, Defendant was aware of Plaintiff's religious belief against performing work on Sundays. (Def.'s Mot. for Summ. J. [Doc. #23], Ex. A, Dep. of Molbert Jacobs, at 64; Def.'s Mot. for Summ. J. [Doc. #23], Ex. B, Aff. of Dafnie J. Driscoll, at 1). During both periods of Plaintiff's employment with Scotland, that is, from 1979 to 1995, and from 2000 to 2008, Plaintiff declined to work on Sundays. (Id. at 2). In his deposition, Plaintiff testified that in 2000, he indicated in his application for rehire that he did not work on Sundays and that he had spoken with Scotland representative, Mr. Chris Gore, at the time of his rehiring in 2000 about not being able to work on Sundays. (Def.'s Mot. for Summ. J. [Doc. #23], Ex. A, Dep. of Molbert Jacobs, at 64-65). Prior to June 2008, Plaintiff was never scheduled to perform work on Sundays. (Def.'s Mot. for Summ. J. [Doc. #23], Ex. B, Aff. of Dafnie J. Driscoll, at 1-2).

In 2008, Scotland's largest customer, which accounted for 95 percent of its sales, had a record year and increased its demand for the heavy duty filter shells that Scotland manufactured. (Def.'s Mot. for Summ. J. [Doc. #23], Ex. B, Aff. of Dafnie J. Driscoll, at 2). Scotland, in response to the increased demand from its customer, progressively expanded its work week, "first from five days to six, then to seven and finally to a 24/7 operation." (Id.). For the first

three months of increased production in Spring 2008, the employees at the plant worked either 10-hour shifts on Monday through Thursday or 12-hour shifts on Friday through Sunday. (Id.). Plaintiff was scheduled to work the 10-hour shifts on Monday through Thursday. (Id.). Mr. Herb Edson ("Mr. Edson"), the other day-shift Lead Hand, was scheduled to work the 12-hour shifts on Friday through Sunday. (Id.). During this period, Mr. Edson was the only other day-shift Lead Hand with the skills necessary to perform the same kind of work performed by Plaintiff. (Id.).

In May 2008, Scotland decided to modify the plant-wide schedule, alternating Sundays among the employees. (Id. at 3). The alternating schedule was implemented in June 2008. (Id.). Mr. Edson was scheduled to work the first Sunday, and Plaintiff was scheduled to work on Sunday, June 8, 2008. (Id.). Consequently, beginning in June 2008, Plaintiff was required to work every other Sunday. (Id.). Plaintiff refused to work on the Sundays on which he was scheduled to work. (Def.'s Mot. for Summ. J. [Doc. #23], Ex. A, Dep. of Molbert Jacobs, at 88). Defendant offered Plaintiff the opportunity to take vacation days in lieu of performing work on Sundays and Plaintiff declined the offer. (Id. at 98-101).

Scotland's attendance policy allows two unexcused absences before disciplinary procedures are initiated. (Def.'s Mot. for Summ. J. [Doc. #23], Ex. B, Aff. of Dafnie J. Driscoll, at 3). After Plaintiff missed work on June 8, June 22, and July 6, 2008, Plaintiff was given a verbal warning for his unexcused absences. (Id. at 4). After another absence on July 20, 2008, Plaintiff was given a written warning. (Id.). Subsequently, Plaintiff received another written warning for his unexcused absence on August 3, 2008. (Id.). On August 18, 2008, Plaintiff was

3

terminated for his August 17, 2008, unexcused absence. (Id.).

On or about February 5, 2009, Plaintiff mailed an Equal Employment Opportunity Commission Intake Questionnaire ("Intake Questionnaire") to the Equal Employment Opportunity Commission ("EEOC"). (Pl.'s Supplemental Resp. to Def.'s Mot. for Summ. J. [Doc. #34], Aff. of Molbert Jacobs, at 1-2). The Intake Questionnaire was received on February 11, 2009, was assigned for processing, and was thereafter inadvertently misplaced at the EEOC. (Decl. of Thomas M. Colclough [Doc. #39], Exs. A, B, G). The Intake Questionnaire was located on July 30, 2009, after Plaintiff contacted the EEOC's Raleigh Area Office, and Plaintiff was interviewed by EEOC Investigator Evelyn Lewis ("Investigator Lewis") on the same day. (Id., Exs. C, G). Following the intake interview, Investigator Lewis, sent Plaintiff an EEOC Form 5, that is, a "Charge of Discrimination," for Plaintiff to sign and return. (Id., Ex. D). On or about August 8, 2009, Plaintiff returned the signed EEOC Form 5. (Id., Ex. E).

On November 1, 2010, Plaintiff filed this civil action, alleging that his termination from employment at Scotland was the result of unlawful discrimination by Defendant against him on the basis of his religious beliefs and practices in violation of Title VII of the Civil Rights Act of 1964. Specifically, Plaintiff contends that: (1) it is against his religion to work on Sundays; (2) that as a long-time employee of Scotland, Defendant was aware of his strongly held religious belief against working on Sunday and had never required him to work on Sundays until approximately May of 2008; and (3) that his termination from employment at Scotland was the result of religious discrimination.

On September 23, 2011, Defendant filed the present Motion for Summary Judgment,

contending that there is no genuine issue of material fact and Defendant is entitled to judgment

as a matter of law because: (1) Plaintiff did not timely file a charge of discrimination with the

EEOC[1]; (2) Defendant offered Plaintiff a reasonable accommodation for his religious beliefs;

---

[1] To the extent Defendant contends that Plaintiff did not timely file a charge with the EEOC, the Court notes that "[i]n order to maintain an action under Title VII, a Plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct." Williams v. Giant Food Inc., 370 F.3d 423, 428 (4th Cir. 2004) (citing 42 U.S.C. § 2000e-5(e)(1)). The "failure to file a timely complaint with the EEOC bars the claim in federal court." Walker v. Novo Nordisk Pharm. Indus., Inc., No. 99-2015, 2000 WL 1012960, at *3 (4th Cir. July 24, 2000). In Federal Express Corporation v. Holowecki, 552 U.S. 389, 128 S. Ct. 1147, 170 L. Ed. 2d 10 (2008), the Supreme Court held that an EEOC Intake Questionnaire constitutes a charge of discrimination if it contains the information required by the agency's regulations, and if it can reasonably be construed "as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Holowecki, 552 U.S. at 402, 128 S. Ct. at 1158. Courts have found that an EEOC Intake Questionnaire constitutes a charge in accordance with Holowecki where the Intake Questionnaire itself states that "[t]he purpose of this questionnaire is . . . to enable the [EEOC] to act on matters within its jurisdiction" and where the questionnaire states that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will . . . consider it to be a sufficient charge of discrimination under the relevant statute(s)." See Bland v. Fairfax Co., Va., 799 F. Supp. 2d 609, 615-17 (E.D. Va. 2011) (discussing Taylor v. Oce Imagistics, Inc., No. 3:07-CV-792, 2008 WL 2148557 (E.D. Va. May 21, 2008)). In the present case, Plaintiff contends that he was terminated from his employment on August 18, 2008, based on religious discrimination in violation of Title VII. Therefore, Plaintiff was required to file a charge of discrimination with the EEOC by February 14, 2009. As noted above, Plaintiff's EEOC Intake Questionnaire was received by the EEOC on February 11, 2009, and was assigned for processing, but was thereafter inadvertently misplaced. Although Plaintiff's Intake Questionnaire was initially misplaced, based on the EEOC's receipt of Plaintiff's Intake Questionnaire on February 11, 2009, the "EEOC processed Mr. Jacobs' charge of discrimination as timely filed." (Decl. of Thomas M. Colclough [Doc. #39], at 3). Further, since Plaintiff's Intake Questionnaire contains language indicating that "the purpose of the questionnaire is to . . . enable the Commission to act on matters within its jurisdiction" and that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will . . . consider it to be a sufficient charge of discrimination," the Court finds that Plaintiff's Intake Questionnaire constitutes a timely filed charge of discrimination in accordance with the standard set forth in Holowecki. See Bland, 799 F. Supp. 2d at 615-17. As it relates to the verification (oath) of Plaintiff's charge of discrimination, the Supreme Court has found that a charge need not be verified within the statute of limitations period, but that an otherwise timely filer may later verify a discrimination charge, which would

5

and (3) Plaintiff's preferred accommodation would have imposed an undue hardship on Defendant. Defendant's Motion for Summary Judgment has been fully briefed and is properly before the Court for review.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Zahodnick v. Int'l Bus. Machs. Corp., 135 F.3d 911, 913 (4th Cir. 1997). Since the substantive law determines materiality, only facts that "might affect the outcome of the suit under the governing law" are considered material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The movant bears the initial burden of demonstrating "the absence of any genuine issues of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Once the movant has met the initial burden, the nonmoving party must "present evidence from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 257, 106 S. Ct. at 2514. When making a summary judgment determination, the court must view the evidence and all justifiable inferences from the evidence in the light most favorable to the non-moving party. Zahodnick, 135 F.3d at 913. While all justifiable inferences are drawn in the favor of the non-movant, he "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there

---

relate back to the date on which the original charge was filed. Edelman v. Lynchburg College, 535 U.S. 106, 115-18, 122 S. Ct. 1145, 1150-52, 152 L. Ed. 2d 188 (2002) (finding that permitting the "relation back of an oath omitted from an original filing ensures that the lay complainant, who may not know enough to verify on filing, will not risk forfeiting his rights inadvertently"). In this case, Plaintiff verified his charge on August 8, 2009, and his verification related back to his original February 11, 2008 filing, which is permissible under Edelman.

6

is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 248, 255, 106 S. Ct. at 2510, 2513.

III.    ANALYSIS

Under Title VII of the Civil Rights Act of 1964, it is an "unlawful employment practice for an employer . . . to discharge an individual . . . because of such individual's . . . religion." 42 U.S.C. §2000e-2(a)(1). An employer therefore has a "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." <u>EEOC v. Firestone</u>, 515 F.3d 307, 312 (4th Cir. 2008) (quoting <u>Trans World Airlines, Inc. v. Hardison</u>, 432 U.S. 63, 75, 97 S. Ct. 2264, 2272, 53 L. Ed. 2d 113 (1977)). In a religious accommodation case, such as the present case, courts employ a burden-shifting framework similar to the one articulated by the Supreme Court in <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). <u>Id.</u> First, the plaintiff must establish a prima facie claim by showing that: (1) he has a bona fide religious belief that conflicts with an employment requirement; (2) he informed the employer of this belief; and (3) he was disciplined for failure to comply with the conflicting employment requirement. <u>Id.</u> (citing <u>Chalmers v. Tulon Co. of Richmond</u>, 101 F.3d 1012, 1019 (4th Cir. 1996)). Second, if the plaintiff establishes a prima facie case, the burden shifts to the defendant employer to show that it could not reasonably accommodate the plaintiff's religious need without undue hardship. <u>Id.</u> (citing <u>Chalmers</u>, 101 F.3d at 1019). To satisfy its burden, the defendant employer must demonstrate either: "(1) that it provided the plaintiff with a reasonable accommodation for his religious observances or (2) that such accommodation was not provided because it would have caused an undue hardship–that is, it would have resulted in more than a *de minimis* cost to the

employer." Id. (internal quotation marks omitted) (quoting Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 67, 107 S. Ct. 367, 371, 93 L. Ed. 2d 305 (1986)).

    a.    Plaintiff's Prima Facie Case

As previously noted above, Plaintiff must establish a prima facie case of religious discrimination before the burden shifts to the employer. Firestone, 515 F.3d at 312. In regard to the first prong of the prima facie case, that is, whether Plaintiff had a bona fide religious belief that conflicted with an employment requirement, EEOC regulations define "religious practices to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." 29 C.F.R. § 1605.1. Plaintiff asserts that it is against his religion to work on Sundays. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. #26], Ex. A, Dep. of Molbert Jacobs, at 101). The record indicates that Plaintiff regards Sunday as a day of worship and that while employed by Scotland, Plaintiff consistently declined to work on Sundays. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. #26], Ex. A, Dep. of Molbert Jacobs, at 101; Def.'s Mot. for Summ. J. [Doc. #23], Ex. B, Aff. of Dafnie J. Driscoll, at 2 ). From the record, the Court finds that for the purposes of a prima facie case, Plaintiff has established that it is his sincerely held religious belief that performing work on Sunday is wrong. Furthermore, Defendant does not contest the sincerity of Plaintiff's belief in not working on Sundays. The record also indicates that a conflict with Plaintiff's religious belief and his employment requirements emerged in or around June 2008, when Plaintiff was required, for the first time since being employed by Scotland, to work on every other Sunday. (Def.'s Mot. for Summ. J. [Doc. #23], Ex. B, Aff. of Dafnie J. Driscoll, at 2-3). Therefore, Plaintiff has

8

sufficiently established the first prong of a prima facie case of religious discrimination, that is, that he holds a bona fide religious belief against working on Sundays and that his belief conflicted with an employment requirement.

With regard to the second prong of a prima facie case of religious discrimination, namely that Plaintiff informed his employer about his belief, Plaintiff contends that he told Defendant about his belief. Defendant does not contest the fact that it was aware of Plaintiff's strongly held belief about not working on Sundays. In her affidavit, Ms. Dafnie J. Driscoll, President of Scotland Manufacturing, indicated that "Jacobs generally worked Monday through Friday, sometimes Saturdays, but never on Sunday due to his religious beliefs." (Def.'s Mot. for Summ. J. [Doc. #23], Ex. B, Aff. of Dafnie J. Driscoll, at 1). Therefore, the second prong of the prima facie case of religious discrimination has been established.

As for the third prong, that is, that Plaintiff was disciplined for failing to comply with the conflicting employment requirement, the record clearly shows that Plaintiff was terminated on August 18, 2008, for his sixth unexcused absence which occurred on August 17, 2008. (Def.'s Mot. for Summ. J. [Doc. #23], Ex. B, Aff. of Dafnie J. Driscoll, at 4). As such, the third prong of a prima facie case of religious discrimination has been established. Therefore, Plaintiff has met his burden of establishing a prima facie case. Consequently, the burden shifts to Defendant to establish that it could not reasonably accommodate Plaintiff without incurring an undue hardship. Firestone, 515 F.3d at 312.

b.      Reasonable Accommodation

As it relates to whether Scotland provided Plaintiff with a reasonable accommodation for his religious observances, the Fourth Circuit has found that a "duty of 'reasonableness' cannot be read as an invariable duty to eliminate the conflict between workplace rules and religious practice." Firestone, 515 F.3d at 314. But see Baker v. The Home Depot, 445 F.3d 541, 548 (2d Cir. 2006) (holding that the "offered accommodation cannot be considered reasonable because it did not eliminate the conflict between the employment requirement and the religious practice"). Instead, the employer, in asserting that it provided a reasonable accommodation, must show that "it has provided the plaintiff with a reasonable, though not necessarily a total, accommodation." Firestone at 315. The Fourth Circuit has also noted that:

> [A]n accommodation that results in undue hardship almost certainly would not be viewed as one that would be reasonable. Likewise, the failure to consider alternative accommodations that pose no undue hardship may, generally speaking, influence the determination of whether an employer's offered accommodation was reasonable.

Id. at 314.

In the present case, Defendant contends that it offered Plaintiff a reasonable accommodation when it offered to allow Plaintiff to take vacation days in lieu of performing work on Sundays. Relying on Firestone, Defendant contends that "allowing employees to use vacation days in lieu of Sunday work has been recognized by the Fourth Circuit as a significant accommodation." (Def.'s Mem. in Supp. of its Mot. for Summ. J. [Doc. #24], at 13) (internal quotation marks omitted). Defendant further asserts that because Scotland "provided [Plaintiff] with a reasonable accommodation, it satisfied its obligations under Title VII and the statutory inquiry is at an end." (Id. at 14). Defendant therefore contends that "Scotland presented to Jacobs reasonable accommodations as a matter of law." (Id. at 17). Additionally, Defendant

10

appears to contend that its offer of vacation days as an accommodation was reasonable under the circumstances because maintaining the prior shift schedule between Plaintiff and Mr. Edson, the only other day-shift Lead Hand, would have been unduly burdensome on Mr. Edson because he would be required to work every Sunday.

In contrast, Plaintiff appears to contend that Defendant's proffered vacation days accommodation was unreasonable because it is against his religion to take vacation pay in lieu of working on Sundays.[2] (Def.'s Mot. for Summ. J. [Doc. #23], Ex. A, Dep. of Molbert Jacobs,

---

[2] By asserting that it is against his religion to receive vacation pay in lieu of Sunday work, Plaintiff has proffered a second religious belief that he appears to contend Defendant should have accommodated. Plaintiff appears to contend that even if Defendant's vacation day accommodation could otherwise be deemed reasonable, it was unreasonable as to him because it is against his religion to receive vacation pay in lieu of Sunday work. In this regard, Plaintiff appears to contend that Defendant, in addition to accommodating Plaintiff's belief in not working on Sundays, was also required to accommodate his belief in not receiving vacation pay in lieu of Sunday work. Defendant has challenged whether Plaintiff has a bona fide religious belief in not receiving vacation pay in lieu of Sunday work. Specifically, Defendant contends that only after filing this lawsuit did Plaintiff assert that taking vacation pay in lieu of Sunday work was against his religion. The Court notes that to the extent that Plaintiff contends that Defendant failed to accommodate his belief in not receiving vacation pay in lieu of Sunday work, Plaintiff is required to establish a prima facie case of religious discrimination as to that belief as well. As discussed above, in order to establish a prima facie case of religious discrimination, a plaintiff must show that (1) he has a bona fide religious belief that conflicts with an employment requirement; (2) he informed the employer of this belief; and (3) he was disciplined for failure to comply with the conflicting employment requirement. Firestone, 515 F.3d at 312. As to the first prong, Plaintiff, in his deposition, asserts that "I'm not going to take money that's given to me on Sunday, vacation or anything else . . . it is not right for me to say look, I'm going to take a vacation day on Sunday and I'm going to get paid for it . . . That's God's time." (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. #26], Ex. A, Dep. of Molbert Jacobs, at 8). However, in the same deposition, Plaintiff asserts "[t]hat's vacation time that I earned, and if you earn something I feel like you ought to take it when you want to." (Def.'s Mot. for Summ. J. [Doc. #23], Ex. A, Dep. of Molbert Jacobs, at 103). Plaintiff has provided conflicting statements relating to his reasons for not taking vacation pay in lieu of Sunday work and aside from his deposition statements, the record contains no other evidence relating to the sincerity of Plaintiff's contention that it is against his religion to receive vacation pay in lieu of Sunday work. The record does not contain enough evidence from which the Court could determine

11

at 101; Pl. Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. #26], at 7 ). Further, Plaintiff

contends that he was only entitled to ten vacation days for the relevant calendar year and that

if he had taken the vacation days, his vacation allowance would only have excused him for four

more of the required Sundays after the date on which he was terminated. (Pl.'s Mem. in Opp'n

to Def.'s Mot. for Summ. J. [Doc. #26], at 1-2). In other words, Plaintiff contends that taking

the vacation days would only have prolonged his inevitable termination since his vacation days

would soon run out. Further still, Plaintiff argues that "Defendant's reliance on <u>Firestone</u> in

contending that it did provide a reasonable accommodation is misplaced" because "<u>Firestone</u>

involved a myriad of accommodations which included not only the use of vacation days, [but

also] floating holidays, unpaid leave time and shift swaps which in totality . . . could be structured

in a way to permit most employees the opportunity to meet all of their religious observances."

(Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. #26], at 6 ) (internal quotation marks

omitted). Plaintiff also argues that the holding in <u>Firestone</u> was "impacted greatly by an existing

---

whether Plaintiff has a sincerely held religious belief in not receiving vacation pay in lieu of Sunday work. Therefore, the Court finds that Plaintiff has failed to establish the first prong of a prima facie case as it relates to his belief in not taking vacation pay. However, even if Plaintiff could establish the first prong of a prima facie case, he cannot establish the second prong which would require him to show that he informed his employer of his belief that it is wrong to receive vacation pay in lieu of Sunday work. In his deposition, Plaintiff explained that in response to being offered the use of a vacation day for missing work on Sunday, he responded "I can't do it." (<u>Id.</u> at 132). In this regard, Plaintiff's response would indicate that he did not clarify his reason for not wanting to receive vacation pay. The record is devoid of any evidence that would suggest that Plaintiff informed his employer of the aforementioned belief. Therefore, it is the finding of the Court that Plaintiff cannot establish a prima facie case of religious discrimination as to his second proffered religious belief in not receiving vacation pay in lieu of Sunday work. As such, in considering the reasonableness of Defendant's proffered vacation days accommodation, the Court will not consider Plaintiff's contention that the vacation days accommodation was unreasonable because it is against his religion to receive vacation pay in lieu of Sunday work.

collective bargaining agreement ["CBA"], which further limited alternative accommodation agreements" and that there is no evidence in the present case that "Defendant's universe of possible accommodations are or would be effectively precluded due to any impediments imposed by a collective bargaining agreement or otherwise." (Id. at 6-7).

In considering the parties' arguments regarding the reasonableness of Scotland's proffered accommodation and Scotland's reliance on the Fourth Circuit's reasonableness determination in the Firestone case, the Court will first recount the relevant facts in Firestone. In Firestone, the plaintiff sought to be excused from work on his Sabbath from sundown on Friday to sundown on Saturday and also to be excused from work on seven separate religious holidays. Firestone, 515 F.3d at 309-10. The plaintiff, due to a series of layoffs, was assigned a new shift from 3:00 p.m. to 11:00 p.m., Mondays through Fridays and sometimes on Saturdays. Id. This schedule was in conflict with the plaintiff's religious belief against working on the Sabbath. Id. In contemplating different possible accommodations, Defendant Firestone, determined that transferring the plaintiff to another shift would not be possible without contravening the governing CBA because the plaintiff lacked the requisite seniority. Id. at 310. After contemplating several accommodations, Defendant Firestone determined that excusing the plaintiff from the company's attendance policy would be too problematic and that such an accommodation would place a burden on Firestone and on the plaintiff's fellow coworkers because someone would have to consistently work overtime to cover the plaintiff's shift. Id. Therefore, Defendant Firestone determined that it would not make a special accommodation for the plaintiff, but instead the plaintiff would have to rely on the standard attendance

13

accommodations provided to all employees. Id. The standard attendance accommodations package included fifteen vacation days, three floating holidays, shift swapping, and sixty hours of unpaid leave. Id. The Fourth Circuit, affirming the lower court, found that the standard accommodations package that was available to the plaintiff in Firestone was reasonable. Id. at 316. The Firestone Court noted that the "use of a seniority-based bidding system for work shifts itself represents a significant accommodation to the needs, both religious and secular, of all of its employees." Id. at 315 (quoting Hardison, 432 U.S. at 78, 97 S. Ct. at 2274). Further, the Fourth Circuit found that the pre-existing attendance policies provided the plaintiff and other employees "with numerous ways of taking time off when necessary" and that "the combination of vacation days, floating holidays, shift swaps, and unpaid leave time could be structured in a way to permit most employees the opportunity to meet all of their religious observances." Id. at 316. Furthermore, the Court found that Defendant Firestone had actually accommodated the plaintiff "[b]eyond these pre-existing attendance policies" by offering the plaintiff at least two other accommodations, which were: (1) allowing the plaintiff to take more half-day vacations than allowed under the CBA, and (2) monitoring the shift schedule on a weekly basis to see if someone from the earlier Friday shift was absent, and if so, allowing the plaintiff to work the earlier shift so that he would not have to take any leave time for his Friday evening Sabbath observance. Id. Based on all of the accommodations described above, the Fourth Circuit agreed with the district court in finding that "no reasonable juror could conclude that Firestone did not provide reasonable accommodation for [the plaintiff's] religious observances in accordance with its Title VII requirements." Id.

14

In the present case, as Plaintiff points out, the facts in the instant case are distinguishable from those in <u>Firestone</u> because there is no evidence in the instant case of a CBA or a bona fide seniority-based scheduling system which would have limited the number of possible accommodations available to Scotland, as was the case in <u>Firestone</u>. Nevertheless, Defendant appears to contend that its proffered accommodation was reasonable under <u>Firestone</u> even in the absence of a CBA or a seniority system, because, according to Defendant, "[t]he <u>Firestone</u> Court also noted that the use of vacation pay in lieu of Sunday work was a reasonable accommodation." (Def.'s Reply in Supp. of its Mot. for Summ. J. [Doc. #27] at 2). As such, Defendant appears to contend that an offer to use vacation days in lieu of Sabbath work is per se reasonable under <u>Firestone</u>. However, in this regard, Defendant's reliance on <u>Firestone</u> is misplaced because <u>Firestone</u> does not stand for the proposition that vacation days, in and of themselves, are per se reasonable when offered as an accommodation to employees for the purpose of weekly Sabbath observance. Rather, in <u>Firestone</u>, while vacation days were a part of the package of accommodations offered to the plaintiff, there were several other accommodations, including floating holidays, shift swaps, and unpaid leave time, that came together to make up the standard attendance accommodations package. The <u>Firestone</u> Court found that based on the accommodations package as a whole, which included the use of vacation days in lieu of Sabbath work, no reasonable juror could conclude that Defendant Firestone had not provided reasonable accommodation for the plaintiff. In this regard, <u>Firestone</u> did not hold that vacation days, in and of themselves, are per se reasonable when offered in lieu of weekly Sabbath work, as Defendant would appear to contend. In the present

15

case, the vacation days were offered in and of themselves as the only accommodation for Plaintiff's mandatory Sunday work. Firestone does not preclude an inquiry in the present case as to whether or not Defendant's proffered accommodation was reasonable under the facts in this case. The Court notes that even outside of the Firestone context, there exists persuasive authority which indicates that an offer of accrued vacation time alone, in lieu of mandatory Sabbath work, is an insufficient accommodation. See Cooper v. Oak Rubber Co., 15 F.3d 1375, 1379 (6th Cir. 1994) (finding that "[a]n employer who permits an employee to avoid mandatory Sabbath work only by using accrued vacation does not 'reasonably accommodate' the employee's religious beliefs"). Therefore, in this regard, the reasonableness of Defendant's proffered accommodation, is not per se reasonable. Instead, the reasonableness of the accommodation requires an inquiry into the specific facts of this case.

The Fourth Circuit has indicated that in determining an accommodation's reasonableness, the accommodation's impact on both the employer and coworkers is an appropriate consideration. Firestone, 515 F.3d at 314 (noting that "[c]onsidering an accommodation's impact on both the employer and coworkers . . . is appropriate when determining its reasonableness"). Additionally, as previously mentioned, "an accommodation that results in undue hardship almost certainly would not be viewed as one that would be reasonable," while "the failure to consider alternative accommodations that pose no undue hardship may, generally speaking, influence the determination of whether an employer's offered accommodation was reasonable." Id. Therefore, in the present case, in determining the reasonableness of Defendant's proffered vacation days accommodation, it is relevant to the

16

determination whether Defendant considered other possible accommodations which would not have posed an undue hardship to the employer or Plaintiff's coworkers. For example, EEOC regulations indicate that "[r]easonable accommodation without undue hardship is generally possible where a voluntary substitute with substantially similar qualifications is available." 29 C.F.R. 1605.2(d)(i). From the record, it is unclear whether Defendant, after instituting the shift rotation system, considered any other accommodations, such as voluntary shift-swapping, when determining that it could only accommodate Plaintiff through the use of his vacation days. Plaintiff contends that Defendant precluded voluntary shift-swapping after it instituted the shift rotation system. Although Defendant contends that it believed it was unfair to accommodate Plaintiff by requiring Mr. Edson to work every Sunday, Defendant's own evidence indicates that Mr. Edson never complained about working the Sunday shift. (Def.'s Mot. for Summ. J. [Doc. #23], Ex. B, Aff. of Dafnie J. Driscoll, at 2). In this regard, Defendant fails to address whether it considered other accommodations that posed no undue hardship, such as, permitting a voluntary shift-swapping arrangement prior to determining that it could only offer Plaintiff the use of his vacation days as an accommodation. While Defendant was not required to provide a "total" accommodation, Defendant's proffered accommodation must have been reasonable under the circumstances, and the extent of Defendant's consideration of other possible accommodations that posed no undue hardship on Defendant or Plaintiff's coworkers is relevant to the reasonableness determination. Firestone, 515 F.3d at 313-14. Therefore, it is the finding of the Court that questions of material fact remain and that reasonable persons with impartial judgment could reach different conclusions as to the reasonableness of the offered

17

accommodation. Consequently, summary judgment is not appropriate on the issue of whether Defendant offered Plaintiff a reasonable accommodation when it offered Plaintiff the use of vacation days in lieu of mandatory Sunday work.

      c.     Undue Hardship

As previously noted, Defendant may meet its burden by showing that it could not reasonably accommodate Plaintiff without causing undue hardship. Firestone, 515 F.3d at 315; see Hardison, 432 U.S. at 84, 97 S. Ct. at 2277. An accommodation causes an undue hardship "whenever that accommodation would result in 'more than a *de minimis* cost' to the employer." Ansonia Bd. of Educ. v. Philbrook, 479 U.S. at 67, 107 S. Ct. at 371 (quoting Hardison, 432 U.S. at 84, 97 S. Ct. at 2277 (finding that an employer is not required to bear more than a *de minimis* cost in order to accommodate the religious observance of an employee, and finding that an employer is not required to incur extra costs to secure a replacement)). Additionally, an undue hardship may be present "where an accommodation would impose more than a *de minimis* impact on coworkers, such as depriving coworkers of seniority rights or causing coworkers to shoulder the plaintiff's share of potentially hazardous work." Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999) (citing Opuku-Boateng v. California, 95 F.3d 1461, 1468 n.12 (9th Cir. 1996)). Additionally, the Fourth Circuit has found more than a minimal burden where an employee's religious need imposes "personally and directly on fellow employees" such as by "invading their privacy and criticizing their personal lives." Chalmers, 101 F.3d at 1021. What "constitutes an undue hardship must be determined within the particular factual context of each case." Balint, 180 F.3d at 1054.

As previously noted above, Scotland contends that at the onset of its 24/7 operation, due to Mr. Jacobs' objection to working on Sundays, Scotland initially did not schedule him to work on any Sundays, but instead "accommodated his religious beliefs by scheduling him to work 10-hour shifts on Monday through Thursday and the other day-shift Lead Hand, [Mr. Edson], to work 12-hour shifts Friday through Sunday." (Def.'s Mem. in Supp. of its Mot. for Summ. J. [Doc. #24], at 2). All of the other employees at Scotland were also scheduled to worked either the 10-hour Monday through Thursday shift or the 12-hour Friday through Sunday shift. Scotland contends that this schedule lasted for three months, but that the schedule became unduly burdensome for half the staff who were working every weekend. (Id.). According to Scotland, the weekend staff's dissatisfaction "led to increased absenteeism, which led to decreased productivity, which caused problems filling the customer's order." (Id.). Therefore, Scotland contends that in early June 2008, in response to employee concerns, it implemented a new plant-wide schedule which alternated the Sunday work among the employees. (Id.). As a result of this change in the plant-wide schedule, Plaintiff was required to work every other Sunday. Scotland asserts that "accommodating Jacobs' request [not to work on Sundays] initially meant that half the employees were scheduled to work weekends and half were not." (Def.'s Mem. in Supp. of its Mot. for Summ. J. [Doc. #24], at 18). Scotland further contends that it determined that the new schedule would be fairer to all. (Id. at 19). As such, Defendant appears to contend that after instituting the new plant-wide shift rotation schedule, the only accommodation it could offer Plaintiff without incurring undue hardship was the use of his vacation days. Defendant states: "The failure to achieve a total accommodation rests on the

19

simple fact that Jacobs's request exceeded what could reasonably be accommodated." (Def.'s Reply in Supp. of its Mot. for Summ. J. [Doc. #27], at 6). Further, Defendant contends that Plaintiff made no effort at "bilateral cooperation" in the search for an accommodation. (Def.'s Mem. in Supp. of its Mot. for Summ. J. [Doc. #24], at 14).

Conversely, Plaintiff argues that Defendant unilaterally ceased offering Plaintiff the initial accommodation of allowing him to work the 10-hour Monday to Thursday shift and precluded shift swapping after June 2008. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. #26], at 2). Plaintiff further contends that the initial shift arrangement was working well between Plaintiff and Mr. Edson, and that the only explanation that the Defendant offers for its change of the accommodation is Ms. Driscoll's statement in her affidavit that the scheduling of the plant in Spring 2008 posed an undue hardship to half the staff. (Id. at 7-8). Plaintiff asserts that Defendant has "failed to make any showing that the three-month accommodation it provided was in any way burdensome or costly to Defendant." (Id. at 8). Further, Plaintiff contends that "reasonable accommodations were then available without undue hardship to Defendant yet Defendant failed to even give consideration to" such accommodations. (Id. at 6).

First, as it relates to bilateral cooperation between Plaintiff and Scotland, although the record does not indicate that Plaintiff suggested alternative accommodations, it is clear that Plaintiff was satisfied with the initial three-month accommodation offered by Defendant and wished to maintain that arrangement. Second, the Court finds that while Defendant asserts that the initial three-month accommodation would have caused an undue hardship on Plaintiff's coworkers, especially Mr. Edson, Defendant presents no evidence to substantiate its contention.

Rather, Defendant relies on Harrell v. Donahue, an Eighth Circuit case, in which a former postal worker who was a Seventh-day Adventist sued the United States Postal Service ("USPS") for not giving him every Saturday off. (Def.'s Mem. in Support of its Mot. for Summ. J. [Doc. #24], at 17-18). In Harrell v. Donahue, the Eighth Circuit found that it would have imposed undue hardship on the USPS to change the shift rotation schedule that was in place because such a change would have violated the CBA. Harrell v. Donahue, 638 F.3d 975, 980 (8th Cir. 2011). The Eighth Circuit noted that "[b]y seeking every Saturday as a scheduled day off, [the plaintiff] effectively asked for the USPS to make a unilateral change to his bid position so that he would operate under a fixed schedule rather than a rotating one. However, the CBA prohibited the USPS from making this accommodation, and doing so would have therefore imposed an undue hardship." Id. at 980. Additionally, the Eighth Circuit found that relieving the plaintiff of Saturday work through annual leave or leave without pay would have substantially imposed on the plaintiff's coworkers because excusing the plaintiff would have violated the Post Office's long-standing seniority system, depriving the plaintiff's coworkers of their rights under the seniority system. Id. at 981. As such, in the present case, Defendant's reliance on Harrell v. Donahue is misplaced because there is no indication that a CBA limited the sort of accommodation that could have been offered to Plaintiff and there is no indication that a seniority system was in place and that accommodating Plaintiff would have deprived his coworkers of their seniority rights. For example, there is no indication from the record that maintaining the prior shift arrangement between Plaintiff and Mr. Edson would have resulted in a denial of Mr. Edson's shift or job preferences, and in the absence of a CBA or a seniority-

based scheduling system, there is no indication that the arrangement would have deprived Mr. Edson of any contractual or seniority rights. See Hardison, 432 U.S. at 81, 97 S. Ct. at 2275. In fact, as Plaintiff asserts, Defendant's own evidence suggests that Mr. Edson never complained about working on Sundays. (Def.'s Mot. for Summ. J. [Doc. #23], Ex. B, Aff. of Dafnie J. Driscoll, at 2). Further still, there is no showing of how the initial accommodation would have imposed more than a *de minimis* impact on Mr. Edson or Plaintiff's other coworkers. For example, in Firestone, an imposition on the plaintiff's fellow coworkers was found where coworkers would have been required to work overtime in order to cover the plaintiff's shift. Firestone, 515 F.3d at 318. In this case, there is no evidence that overtime work would have been required in order to accommodate Plaintiff. As such, the Court finds that Defendant has failed to provide sufficient evidence from which the Court could determine whether the initial accommodation would have had more than a *de minimis* impact on Plaintiff's coworkers, particularly Mr. Edson. Therefore, summary judgment is not appropriate on this basis.

As it relates to whether the initial accommodation would have required Defendant itself to bear more than a *de minimis* cost, Defendant contends that it revised the prior shift arrangement and rescinded Plaintiff's initial accommodation because of increased absenteeism among the weekend staff that resulted in decreased production and problems fulfilling its customer's order. (Def.'s Mot. for Summ. J. [Doc. #23], Ex. B, Aff. of Dafnie J. Driscoll, at 3). However, Defendant has not established the extent of the burden imposed in a quantifiable manner. See Daniel v. Kroger Limited P'ship I, No. 3:11cv245, 2011 WL 5119372, at *9 (E.D. Va. Oct. 27, 2011) (noting that summary judgment would not be proper on the basis of

undue hardship where the employer "does not establish the extent of the burden imposed in a quantifiable manner"). Furthermore, Defendant has failed to sufficiently indicate how the absenteeism among Plaintiff's coworkers was related to or the result of Defendant's initial accommodation of Plaintiff's religious belief, as Defendant appears to contend. The Court lacks sufficient information at this stage in the proceedings to determine whether providing the initial accommodation would have resulted in more than a *de minimis* cost to Scotland. As such, the Court finds that summary judgment on this basis is inappropriate.

IV.    CONCLUSION

Questions of fact remain as to whether Defendant's proffered accommodation of allowing Plaintiff to use vacation days in lieu of mandatory Sunday work was reasonable under the circumstances of this case. Additionally, Defendant has failed to present sufficient evidence to show that it could not reasonably accommodate Plaintiff without undue hardship. As such, Defendant has failed to rebut Plaintiff's prima facie case of religious discrimination. Summary judgment as to Plaintiff's claim of religious discrimination in violation of Title VII is therefore inappropriate.

IT IS THEREFORE ORDERED, that Defendant's Motion for Summary Judgment [Doc. #23] is DENIED.

This, the 21st day of June, 2012.

United States District Judge

23

24